### NEW YORK LIFE INSURANCE COMPANY v. ANNIE E. ENGLISH.

#### No. 1089. Decided April 7, 1902.

**1.—Insurance—Default in Payment—Forfeiture—Notice.**

On a policy of life insurance issued by a New York company and governed by the laws of that State, which required notice to insured of the payment falling due before forfeiture for nonpayment, extension of time for payment of an annual premium was granted by the insurer, after duly giving such notice, on part payment and the execution of a note due in six months, by the insured, for the balance, with the understanding that all rights of the insured should be forfeited if such note was not paid at maturity. Held, that the statute requiring notice before forfeiture applied to the payment of the extension note as well as to that of the original premium for which it was given, and a forfeiture for nonpayment of the note, declared without having given such notice, was inoperative. (Pp. 395-404.)

**2.—Same—Cases Discussed.**

New York Life Insurance Company v. Orlopp, 61 Southwestern Reporter, 336, approved, and Conway v. Insurance Company, 140 New York, 79, and Strauss v. Insurance Company, 67 New York Supplement, 509, discussed. (Pp. 401, 403.)

Question certified from the Court of Civil Appeals for the Fourth District, in an appeal from Dimmitt County.

*Denman, Franklin & McGown,* for appellant.—We submit: 1. That the statutes does not by express terms apply to notes given in settlement of past due premiums whereby the parties contracted that the policy shall be extended conditionally, the condition being that the note shall be paid upon maturity. 2. That if the statute applies it must result from a particular construction of the statute and in determining the construction placed upon the statute by the New York courts, we contend (1) that the burden is on Mrs. English to show any construction by the New York courts changing the plain import and language of the statute, which

burden has not been discharged in this case; and (2) that in the absence of such a showing in the record, this court will do one of two things: (a) Follow the plain language of the statute; or (b) look to the New York court's decisions as advisory and give to the statute the construction given it by the New York courts, unless such construction is palpably wrong.

In presenting these contentions we submit the following propositions:

First Proposition. The policy in express terms conditionally bound the company to pay to Mrs. English $3000 in installments upon the death of William E. English, the conditions expressed being: (1) As shown in the third stipulation that the sum of $72.30 should be paid in advance on the 5th day of April of each year after the delivery of the policy with a grace of one month; and (2) that the policy should lapse and be no longer in force after the premium remained unpaid for thirty days after its maturity, as is shown by the following language: "If any premium is not paid on or before the day when due, this policy shall become void and all payments previously made shall remain the property of the company." The obligation of the company to pay this insurance under this policy, therefore, never became absolute upon the death of English, because the premium due April 5, 1900, has never been paid and by its terms the policy was no longer in force after default in the payment of this premium.

Second Proposition. Under the New York statute, which is a part of the contract of insurance, the policy could not be forfeited for the failure to pay the premium maturing April 5, 1900, without the notice required by that statute; but this notice was given and the requirements of the law complied with; hence, under the terms of the contract of insurance, the policy would have ceased to be in force after May 5, 1900, the premium being then unpaid.

Third Proposition. The company and the insured so construed the contract of insurance, and began negotiations to prevent its lapse on May 5, 1900. These negotiations resulted in a new contract conditionally continuing the policy for another year, the condition being that the policy should remain in force for another year if the note given in part payment of the premium should be paid at maturity; but if the note should not be paid when due, it was specifically agreed between the assured and the company that the policy should then cease to be in force, and all claims to insurance and to the premiums paid were immediately to cease and be forfeited to the company, as is evidenced by the language in the note: "This note is given in part payment of the premium 4-5-1900 on the above policy, with the understanding that all claims to further insurance and all benefits whatever which full payment in cash of said premium would have secured shall become immediately void and forfeited to the New York Life Insurance Company if this note is not paid at maturity;" and the language of the receipt, which, after acknowledging the payment of some money and the execution of the note, recites: "Which continues said policy in force until the 5th day

of April, A. D. 1901, at noon, in accordance with its terms and conditions, provided the above note is paid at maturity."

Under the terms of this new contract the lapse of the policy was suspended until the maturity of the note, but the obligation of the company to pay this insurance never became absolute upon the death of English, because the premium note due October 5, 1900, was not paid and the policy was thereafter no longer in force under the express provisions of the renewal contract. This contract was valid and a complete defense to Mr. English's action on the policy unless the New York statute required notice to be given of the maturity of the note.

Fourth Proposition· The New York statute invoked by Mrs. English to annul the renewal or last contract and prevent its terms from defeating her recovery does not apply. That statute by express terms is limited to premiums maturing at a fixed date in the face of the policy as is shown by its language: "No insurance corporation doing business in this State shall, within one year after the default in payment of any premium, installment of interest, declare forfeited or lapsed any policy hereafter issued or renewed. * * * Nor shall such policy be forfeited or lapsed by reason of nonpayment of any premium, interest or installment, or any portion thereof, required by the terms of the policy to be paid, within one year from the failure to pay said premium, interest or installment, unless a written or printed notice stating the amount of such premium, interest or installment or portion thereof due on such policy, * * * shall have been duly addressed and mailed * * * at least fifteen and not more than forty-five days prior to the day when the same is payable. * * * If the payment demanded by such notice shall be made within its time limited therefor, it shall be taken to be in full compliance with the requirements of the policy in respect to the time of such payment."

This deals with premiums, interest and installments required to be paid by the policy; it does not deal with a note given for a premium maturing by the terms of the policy on a fixed day and in settlement of that premium; nor is it declared that this supplemental contract providing for the lapse of the policy for failure to pay the note shall be void unless a notice is given of the maturity of the note. The statute deals with the policy and payments required by its terms at fixed dates, whether in their entirety or in installments or portions thereof, not with additional contracts made with reference to past due premiums settled by note extending its time of payment.

Fifth Proposition. If in construing this statute the courts of New York have extended its requirements so that notice must be given of the maturity of notes given in settlement of premiums past due, then the burden is upon Mrs. English asserting this particular construction. to allege and prove the New York decisions so extending the statute, and this she has not discharged, and can not therefore avail herself of any construction of the statute not within its plain import and language.

Sixth Proposition. In the absence of pleading or proof of a particular

construction of the New York statute by the courts of that State, this court will limit the statute to its plain meaning or look to the decisions of the courts of last resort in New York State as advisory and persuasive in construing the New York statute, and if this is done it will be found that those courts hold that the statute in question does not apply to cases like this and hold that no notice is required to forfeit under the renewal or additional contract, stipulating that the policy shall lapse for failure to pay a note given for past due premiums.

We have cited the New York authorities in our brief in this case. They are:   Conway v. Insurance Co., 140 N. Y., 80; Holly v. Insurance Co., 105 N. Y., 441; Banholzer v. Insurance Co., 77 N. W. Rep., 295; Forbes v. Insurance Co., 51 N. E. Rep., 84.

It is therefore apparent that the appellee in this case invoked the New York law to defeat the terms of the contract of insurance providing for the lapse of this policy by reason of the failure to pay the note given for the past due premium, which note matured on October 5, 1900.

The statute does not by express terms require notice to be given of the maturity of the note in question, and she therefore asked the court to construe the statute so as to extend this requirement to the maturity of notes and additional or supplemental renewal contracts, as well as to premiums primarily maturing under the terms of the policy.   In other words, the statute deals with the policy and the premiums required to be paid by it.   The appellee asks to apply that statute to supplemental or additional contracts and to notes given in settlement of premiums required to be paid by the policy.   She asks this strained construction of the statute without referring to the construction given the statute by the New York courts, and so far as this certificate is concerned the court will have to look to those decisions as advisory or persuasive in determining what construction it will give the New York statute.

The appellee evidently bases her hope of recovery in this case upon Judge Hunter's decision in the case of New York Life Insurance Company v. Orlopp, 61 S. W. Rep., 339.   That case is not a parallel case to the one at bar by any means.

*F. Vandervoort,* for appellee.—The notice given by appellant of the maturing of the premium of April 5, 1900, is fatally defective, because it states that if such premium shall not be paid by or before the day it falls due, the policy will become forfeited, with an exception not applicable to this case, and the policy itself substantially states that such forfeiture can not occur until thirty days thereafter, and the statute does not allow such forfeiture until thirty days notice has been given.   Insurance Co. v. Dingley, 93 Fed. Rep., 153.

Appellant, after the maturity of the April 5, 1900, premium, accepted of the insured the $18.10 in cash and his note for $54.20, and thereby waived any forfeiture of said policy and canceled the effect of the notice given him of the due date of said premium.   Insurance Co. v. Smith, 41 S. W. Rep., 683.

The acceptance of the note and cash for the premium of April 5, 1900, by appellant did not constitute a lapsing of the policy or its being forfeited by the company without other statutory notice to the insured, because said note was given for a portion of said premium, and the New York statute requires such notice to be given of the due date of a portion as well as of a whole premium. Insurance Co. v. Orlopp, 61 S. W. Rep., 336; Strauss v. Insurance Co., 67 N. Y. Supp., 509; Banholzer v. Insurance Co., 77 N. W. Rep., 295, and 78 N. W. Rep·, 244; Conway v. Insurance Co., 140 N. Y., 79.

It must be assumed that the money represented by the note is a "portion" of the · April 5, 1900, premium; otherwise, if the note be considered a payment, it and the cash would have paid the premium in full, and consequently the policy would have been fully paid up to April 5, 1901, or long after the death of the insured.

In Conway v. Insurance Company, a note was given for an entire premium, but the authority of the agent to take such note was questioned. The· court held that the statute requiring notice did not apply to that case, but there is nothing to show how the court would have held had the taking of the note been authorized.

In Banholzer v. Insurance Company, it was held that the statutory notice of the due date of a note given in part payment of a premium need not be given (against the judgment of four of the five members of the court, and on a rehearing one of the members handed down a vigorous dissenting opinion). The court so held on authority of the Conway case.

In Insurance Company v. Orlopp, it is plainly held that the statutory notice of the due date of a premium note must be given to entitle the Insurance Company to the benefits of a forfeiture. The Conway case is discussed and not considered satisfactory.

And finally, in Strauss v. Insurance Co., the New York Supreme Court has held that such notice must be given. A note in that case had been given for a part of a premium, and contained a forfeiture clause if not paid at maturity. The court held it was ineffective and could be given no greater force than in the policy itself, because the statute limits the operation of such agreements of forfeiture so that they can only take effect after the prescribed notice.

The appellee is the beneficiary in said policy, and has a vested interest therein. She did not sign the note, and the forfeiture clause is not binding on her except as controlled by the provisions of the policy and statute. Buxer v. Insurance Co., 49 Law. Rep. Ann., 737, and authorities cited in footnote.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Fourth Supreme Judicial District has certified to this court the following statement and question:

"This is a suit brought by the appellee, Annie E. English, against appellant, the New York Life Insurance Company, to recover upon a

policy issued by appellant upon the life of her husband, William E. English.

"It is conceded by both parties that under the contract of insurance, the policy sued upon shall be construed according to the laws of the State of New York.

"The facts shown by the evidence admitted under proper allegations in the pleadings of the party which we deem pertinent to the question of law to be solved are as follows:

"On the 18th day of April, 1899, appellant, the New York Life Insurance Company, a foreign corporation duly authorized to do business in the State of Texas, issued its policy of insurance upon the life of W. E. English, whereby it agreed to pay to Annie E. English (appellee), wife of the insured, or, in the event of her prior death, to the insured's executors, administrators, or assigns, at the home office of the company in the city of New York, the sum of $3000, payable in ten equal annual installments, the first installment to be paid immediately upon the receipt and approval of proofs of the death of William E. English, of Carizzo Springs, in the county of Dimmitt, State of Texas, and the subsequent installments to be paid annually thereafter.

"The policy shows upon its face the following stipulations and agreements:

" '(1) And the company agrees that said installments may be commuted for a single payment of $2582, payable when the first installment becomes due, if the written consent of the insured has been filed with the company.

" '(2) And the company further agrees that this policy shall be incontestible after it has been in force one full year, if the premiums have been duly paid.

" '(3) This contract is made in consideration of the written application of the insured which is a part of this contract, and in further consideration of the sum of $72.30, to be paid in advance, and the payment of a like sum on the 5th day of April of every year thereafter, until the death of said insured.

" '(4) The special advantages, benefits, and provisions printed or written by the company on the following pages are conditions precedent and a part of this contract as fully as if they were recited at length over the signatures hereto affixed.'

"The following conditions of said policy of insurance appear on the back thereof and are by the terms of the policy a part of the same:

" '(2) Grace in Payment of Premiums.—A grace of one month will be allowed in payment of premiums after this policy shall have been in force three months, subject to an interest charge at the rate of 5 per cent per annum for the number of days during which the premium remained due and unpaid. During the month of grace, this policy remains in force and the unpaid premium, with interest as above, remains an indebtedness to the company, which will be deducted from the amount payable

ander this policy if the death of the insured shall occur during the month.

" '(3)   Reinstatement in Event of Lapse.—This policy will be reinstated on written application therefor within six months after nonpayment of any premium, subject to evidence of good health satisfactory to the company, and payment of premiums to date of reinstatement with interest at the rate of 5 per cent per annum.

" '(4)   General Regulations.—No agent has power in behalf of the company to make or modify this or any contract of insurance, to extend the time for paying any premium, to waive any forfeiture, or to bind the company by making any promise or making or receiving any representation or information.   The powers can be exercised only by the president, vice-president, second vice-president, actuary or secretary of the company, and will not be delegated.   All premiums are due and payable at the home office unless otherwise agreed in writing, but may be paid to agents producing receipts signed by the president, vice-president, second vice-president, actuary or secretary, and countersigned by such agent.   If any premium is not paid on or before the day when due, this policy shall become void, and all payments previously made shall remain the property of the company, except as hereinbefore provided·

" 'Proofs of death must be furnished to the company at the home office within one year after the death of the insured, which proofs shall comprise satisfactory statements establishing the claim.   Such statements must fully comply with the company's forms in use at the time of the death of the insured.   Any indebtedness to the company, including any balance of the current year's premium remaining unpaid, will be deducted in any settlement of this policy or of any benefit thereunder.'

"The following portion of the statutory laws of the State of New York were plead and introduced in evidence:

" 'Chapter 218.   An act to amend the insurance law and the act amendatory thereof, relative to capital and surplus.

" 'Section 92 of said chapter is hereby amended so as to read as follows:

" 'Sec. 92.   No forfeiture of policy without notice.   No life insurance corporation doing business in this State shall, within one year after the default in payment of any premium, installment, or interest, declare forfeited or lapsed any policy hereafter issued or renewed and not issued upon the payment of monthly or weekly premiums, or unless the same is a term insurance contract for one year or less, nor shall such policy be forfeited or lapsed, by reason of nonpayment, when due, of any premium, interest or installment or any portion thereof required by the terms of the policy to be paid, within one year from the failure to pay said premium, interest, or installment, unless a written or printed notice stating the amount of such premium, interest, installment, or portion thereof due on such policy, the place where it shall be paid, and the person to whom the same is payable; shall have been duly addressed and mailed to the person whose life is insured or the assignee of the

policy, if notice of the assignment has been given to the corporation, at his or her last known postoffice in this State, postage paid by the corporation, or by any officer thereof, or person appointed by it to collect such premium, at least fifteen and not more than forty-five days prior to the day when the same is payable.

" 'The notice shall also state that unless such premium, interest, installment, or portion thereof, then due, shall be paid to the corporation, or to the duly appointed agent or person authorized to collect such premium by or before the day it falls due, the policy and all payments thereof will become forfeited and except as to the right to surrender value or paid up policy as in this chapter provided.

" 'If the payment demanded by such notice shall be made within its time limited therefor, it shall be taken to be in full compliance with the requirements of the policy in respect to the time of such payments; and no such policy shall, in any case, be forfeited or declared forfeited or lapsed until the expiration of thirty days after mailing of such notice. The affidavit of any officer, clerk, or agent of the corporation or of any one authorized to mail such notice that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be presumptive evidence that such notice has been duly given. No action shall be maintained to recover under a forfeited policy unless the same is instituted within one year from the day upon which default was made in paying the premium, installment, interest or portion thereof, for which it is claimed that forfeiture ensued.'

"A premium on the policy matured April 5, 1900. On the 14th day of March prior thereto, in compliance with the above statute, the appellant mailed to William E. English at Carrizo Springs, Texas, his postoffice address, the following printed notice: 'Bring this card with you when paying premium or inclose it with your remittance.

" 'The New York Life Insurance Company hereby gives notice that on policy No. 942234 a premium of $72.30 will be due April 5, 1900, provided the policy be then in force. This premium will be due and payable at the home office, 346 and 348 Broadway, New York, to the cashier of the company, or R. H. Mitchell, cashier, Trust Building, Dallas, on the production of the official receipt therefor. Unless such premium then due shall be paid to the company or a duly appointed agent or person authorized to collect such premium on or before the day it falls due, such policy and all payments thereon will become forfeited and void, except as to the right of a surrender value or paid up policy which may be provided in said policy or by statute. This notice is required by the laws of New York and does not modify any terms of the contract.

(Signed.)      " 'JNO. A. McCALL, President.'

"After the premium became due and being unpaid, at the time of their respective dates, the company, by its cashier, R. H. Mitchell, at

Dallas, wrote W. E. English the following letters and mailed them to him at Carrizo Springs, Texas:

" 'DALLAS, TEXAS, 4-24-1900.
" 'W. E. English, Carrizo Springs, Texas:
" 'Dear Sir.—We beg to remind you that your premium of $72.30 on policy No. 942234 was due April 5th and is still unpaid.  Your remittance must include interest at the rate of 5 per cent per annum from the 5th day of April, 1900.  Your last day of grace is May 5, 1900.  Yours truly.
" 'R. H. MITCHELL, Cashier.'

" 'DALLAS, Texas, Apl. 25, 1900.
" 'Mr. W. E. English, Carrizo Springs, Texas:
" 'Dear Sir.—I beg to remind you that your premium of $72.30 on policy No. 942234 was due April 5.  May 5, 1900, will be your last day of grace, and if you will remit before that day, please add interest at the rate of 5 per cent per annum for the time past due.  A policy of insurance in the New York Life is such a valuable protection against loss that may come at any time, and such a valuable investment if kept in force, that we feel sure that nothing but an oversight or misapprehension of the facts could induce you to sacrifice your contract with the company.  If you have delayed making this payment on account of lack of ready funds, if you will send me one-half or even one-fourth of the amount of premium (interest to be paid in full in cash), I will extend the balance for six months, interest at the rate of 5 per cent per annum.  Please favor me with a prompt reply.  Yours very truly,
" '————— ——————,
" 'Cashier.

" 'DALLAS, TEXAS, May 5, 1900.
" 'Mr. W. E. English, Carrizo Springs, Texas:
" 'Dear Sir.—I am in receipt of your esteemed favor of the 2d instant, inclosing $18.10 as part payment of annual premium of $72.30 due April 5th under your policy No. 942234.  As requested, I inclose herewith note duly filled out for balance on one of company's forms, which please sign as indicated, stamp with 2 cent revenue stamp as required by law, and return to this office.  Upon receipt of this note properly executed, I will take pleasure in sending you receipt covering settlement.  Yours truly,
" 'R. H. MITCHELL, Cashier.'

"On May 4, 1900, English paid $18.10 on the premium and gave his note for the balance, which is as follows:

" 'Pol. 942234.                        " 'DALLAS, Texas, Apl. 5, 1900.
" 'Without grace six months after date I promise to pay to the order

of the New York Life Insurance Company $54.20 at National Exchange Bank, Dallas, Texas, value received, with interest at the rate of 5 per cent per annum. This note is given in part payment of the premium due 4-5-1900, on the above policy, with the understanding that all claims to further insurance and all benefits whatever which full payment in cash of said premium would have secured shall become immediately void and forfeited to the New York Life Insurance Company if this note is not paid at maturity, except as otherwise provided in the policy itself.

(Signed.)    " 'W. E. English.'

"And the company then delivered to him the following receipt:

" 'Cash $18.10.                                    " 'Dallas, Texas, 5-4-1900.
    " 'Note 6 mos. dated Apl. 5, 1900, due Oct. 5, 1900, without grace. Made by W. E. English. Payable at National Exchange Bank, Dallas, Texas.
    " 'Received from the owner of policy No. 942234, $18.10 in cash and his note at six months for $54.20, which continues said policy in force until the 5th day of April, 1901, at noon, in accordance with its terms and conditions, provided the above note is paid at maturity, and this receipt signed by R. H. Mitchell, cashier.'

"The following letter accompanying the receipt was written and authorized from the company's branch office at Dallas, Texas, to W. E. English, Carrizo Springs, Texas:

" 'Dallas, Texas, May 19, 1900.
" 'W. E. English, Carrizo Springs, Texas:
    " 'Dear Sir.—Referring to our recent correspondence, I take pleasure in handing you herewith receipt for April, 1900, premium under your policy No. 942234.
    " 'In this connection I desire to call your special attention to the fact that your note, given in part settlement of this premium, will be due October 5, 1900, without grace, and is payable at the National Exchange Bank of this city. In due course, kindly forward the bank draft or money order to cover, thereby preventing lapse of policy. Yours very truly,

" 'R. H. Mitchell, Cashier.'

"And on October 8, 1900, appellant, by its cashier, R. H. Mitchell, wrote from Dallas, Texas, addressed to W. E. English, Carrizo Springs, Texas, the following letter:

" 'Dallas, Texas, Oct. 8, 1900.
" 'Mr. W. E. English, Carrizo Springs, Texas:
    " 'Dear Sir.—The National Exchange Bank of this city have just advised me that you failed to pay your note of $54.20 (interest $1.35)

due on the 5th instant, without grace, and given in part settlement of the April, 1900, premium under your policy No. 942234.

" 'Thinking perhaps this was an oversight on your part, wish to say if you will forward me remittances covering amount of note and interest, and also furnish us with the inclosed health certificate executed by our examiner in your city, Dr. J. W. Hargus, without expense to the company, I will again take pleasure in placing your insurance in force and forwarding you your note for cancellation, provided health certificate proves satisfactory to our medical board at New York. If it will be inconvenient for you to settle this note in full, I am pleased to say that the company, in order to assist you, will be willing to accept onehalf or even one-third of the amount of the note in cash, provided interest is paid, and grant you a three months' extension on the balance.

" 'Trusting you will favor me with an early reply, I am yours very truly,

" 'R. H. MITCHELL, Cashier.'

"The note copied in this statement and referred to in the above letter was not paid at maturity, nor has the note or any part of it ever been paid. No other notice in conformity and compliance with the statute of the State of New York, above quoted, than the notice above cited in this statement was ever given the insured by appellant company. The note was canceled by appellant at its home office in New York City on the 17th day of October, 1900, but retained by the company, as it claims, as evidence of the transaction and right of the company to declare the policy canceled. On the same day the policy was marked 'lapsed' on the books of the company, 'April 5, 1900,' this being the date for the payment of the premium, the failure of which to pay appellant claims caused the lapse of the policy.

"W. E. English died at Carrizo Springs, October 19, A. D. 1900. After his death the amount due on the note, premium and interest, was tendered the company by appellee and payment of the policy demanded by her. Appellant refused to accept the tender or pay the policy, claiming that the same had been forfeited by the failure of the insured to pay the premium due thereon.

"Question: Did the acceptance of the note and cash for the premium of April 5, 1900, by the appellant, in view of the facts stated, constitute such a renewal of the policy, or have such effect as would prevent its lapsing or being forfeited by the company without other notice to the insured, such as is provided for in the statute of the State of New York, than is shown by our statement of the facts in this case?

We answer the question, that the failure of the insurance company to give notice of the time when the note would fall due, as required by the statute of New York certified, prevented the forfeiture of the policy in this case.

The case of New York Life Insurance Company v. Orlopp, 61 South-

western Reporter, 336, rested upon the same state of facts in every material particular as appear from the certificate in this case, and the Court of Civil Appeals held in that case that the same law which is set out in the certificate applied to a note given under similar circumstances and in the same language, except dates, amounts, and number of policy, and the words "without grace," which do not appear in the note in that case. The New York Life Insurance Company applied to this court for a writ of error, which was refused. The sole ground upon which the application rested was that the court erred in holding that the law of New York, which is now under investigation, required the insurance company to give the notice therein specified upon the failure of the insured to pay the note given for a part of the premium as in this case. The refusal of the application necessarily involved the concurrence of this court in the decision in that case in which Justice Hunter ably and elaborately discussed the whole question, and we shall not extend this discussion beyond what is necessary to express tersely our reasons for the answer given to the question.

The statute of New York is properly before us by pleading and proof on the part of the appellee, and we will construe it as if it were a domestic statute, looking to the decisions of the State of New York for such light as they may throw upon the question. This, in substance, is the proposition submitted in the argument of the counsel for appellant, and we think correctly states the duty of this court in the premises.

When the premium upon the policy, $72.30, fell due on April 5, 1900, the agent of the company in Texas very kindly proposed to English, "If you will send me one-half or even one-fourth of the amount of the premium, I will extend the balance for six months." English paid $18.10 on the premium and gave his note for the balance, $54.20, which recited that it was given in part payment of the premium, "with the understanding that all claims to further insurance and all benefits whatever which full payment in cash of said premium would have secured shall become immediately void and forfeited to the New York Life Insurance Company if this note is not paid at maturity, except as otherwise provided in the policy itself." The renewal receipt provided that if the note was paid at maturity the policy would be continued in force until April 5, 1901. We have grouped these facts as a basis for the proposition that the $54.20 expressed in the note was and continued to be "a portion" of the premium which became due April 5, 1900. The agent understood that payment of a portion of the premium was postponed. English accepted the proposition and acted upon it, and the future life of the policy was made to depend upon the payment of the note. By the payment the benefits of the policy would be secured as if paid when first due and failure would cause just such loss under the policy as would have resulted if the note had not been given. We think that there can be no doubt on the question that the $54.20 embraced in the note was a part of the premium which fell due on the 5th of April, 1900.

The law of the State of New York under consideration was not enacted

for the benefit of the insurance companies, but was passed to prevent forfeitures of policies, and must be liberally construed to accomplish the purpose. Seiders v. Life Assn., 93 Texas, 200. By the terms of the New York statute before quoted, no insurance company can forfeit any policy of insurance except it be "weekly premiums or term insurance, for one year or less," on account of the failure of the insured to pay any premium or "any portion thereof," within one year from the failure, except notice as required by that statute has been given. The amount secured by the note was a portion of the premium required by the policy to be paid and is within the very letter of the law. There is nothing in the statute which would exclude a note like this; on the contrary, it seems to have been framed with a view to cover all cases of failure to pay the premium on a policy of life insurance.

We are referred to the case of Conway v. Insurance Company, 140 New York, 79, as placing a different construction upon this statute. We have examined that case carefully, and we are of opinion that the decision is not entitled to be regarded as the law of the State of New York. (1) Because the case had been decided and fully disposed of upon the proposition that the note was taken without authority on the part of the agents and that the company was not bound by it as an extension of the time of the policy. (2) Because the subject of notice is disposed of in such a manner as to show that it had received no careful consideration by the court. The whole subject is disposed of in this language: "No further notice was required from the company to the deceased. The notice provided to be given by the statute as a condition of its right to declare a policy lapsed for nonpayment of an annual premium was not necessary, inasmuch as it had duly given the notice before the premium became due, which the statute has provided for. The statute does not apply to this case." No reasoning is indulged in to show why the note is not embraced in the plain terms of the statute, and in fact it is not entirely clear that the opinion refers to this particular point in the statute. (3) The statement of that case shows that the note was given to the general agents, who withheld the renewal receipt. The court held that the agents did not have authority to extend the time of payment; the note did not belong to the company, and, having disposed of the case upon that ground, it would follow that no notice was required to be given by the company as to that note. This is all the court said with reference to notice, which does not in terms nor in spirit embrace a note given by authority of the company upon which the policy was actually renewed as in this case. In Strauss v. Insurance Company, 67 New York Supplement, 509, in which a note like this had been given by the insured, and, upon failure to pay it, the company claimed a forfeiture of the policy, which the Supreme Court of that Sate held could not be maintained against the assignee to whom notice had not been given of the failure to pay the premium, and in concluding the opinion upon the question of the forfeiture claimed under the terms of the note, the court said: "The condition in the unpaid note given for part of the premium that the pol-

icy should 'without notice to any party or parties interested therein be null and void on the failure to pay this note on maturity,' was ineffective. It has to be coupled with the like condition in the policy itself that the policy shall be null and void on failure to pay any premium or note given therefor on the day it comes due, and can be given no greater force. The statute limits the operation of such agreements of forfeiture so that they can only take effect after the prescribed notice of forfeiture. It is prohibitive and can not be evaded." This brief and cogent statement of the law upon the subject of the note seems to us to be in direct conflict with the construction sought to be placed upon the loose statement in the case previously decided, and is entitled to more weight in determining the meaning of that statute. That decision was affirmed by the appellate division of that court, which is inferior in jurisdiction to the Court of Appeals, but it shows that the Supreme Court, which decided and affirmed that case, did not understand Conway v. Insurance Company as it is interpreted by counsel for appellant.